82 Ill.2d 67 (1980)
411 N.E.2d 261
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v.
WILLIAM H. NELSON, Appellee.
No. 52823.
Supreme Court of Illinois.
Opinion filed September 29, 1980.
*68 William J. Scott, Attorney General, of Springfield, and Ronald Dozier, State's Attorney, of Bloomington (Donald B. Mackay, Melbourne A. Noel, Jr., and Faith S. Salsburg, Assistant Attorneys General, of Chicago, and Gary J. Anderson and Robert J. Binderman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.
Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.
Appellate court reversed; circuit court affirmed.
MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:
In a jury trial in the circuit court of McLean County defendant, William H. Nelson, was convicted of burglary and theft over $150. He was sentenced to the penitentiary for a term of seven years on the burglary count and five years on the theft count, to run concurrently. The appellate court reversed and remanded (77 Ill. App.3d 85), and we allowed the People's petition for leave to appeal. In reversing, the appellate court held that the assistant public defenders who represented defendant and a codefendant *69 were to be "treated as one lawyer or at least as though they were members of the same firm." (77 Ill. App.3d 85, 87.) It determined that a conflict of interest arose in the joint representation of these codefendants and that when that conflict became obvious it was incumbent upon the circuit court to effect appointment of different counsel. The People contend that the representation of defendant and his codefendant by two different assistant public defenders was not joint representation and that there was no actual conflict of interest. The People contend further that no assertion of a conflict of interest was made prior to trial and the circuit court was not required sua sponte to recognize that there was a possible conflict of interest and appoint other counsel for defendant.
In separate informations, defendant and a codefendant, John Rogers, were charged with the offenses of burglary and theft over $150, and the McLean County public defender was appointed to represent them. At their joint preliminary hearing assistant defender John Schwulst represented both defendant and Rogers. Thereafter defendant was represented by assistant defender William Paul, while assistant defender Schwulst continued to represent Rogers. Prior to defendant's trial Rogers pleaded guilty to the charge of burglary; however, at that time he had not yet been sentenced.
The evidence at trial showed that in the early morning hours of August 15, 1978, Maupin's Market in Saybrook was burglarized. The owner testified that a number of cartons of cigarettes, some keys, and a quantity of change were missing from the store. Witnesses were unable to describe the perpetrators, but they testified that two persons departed the scene in a light-blue pickup truck. A short time after the occurrence an Illinois State Trooper noticed a pickup truck that was parked on a rural road and matched the description given by witnesses. The officer observed grocery sacks containing cigarettes in the rear of *70 the truck, and, after assistance arrived, defendant and Rogers were taken into custody. When defendant was searched at the McLean County jail he was found to be in possession of keys taken from Maupin's Market and a large quantity of change.
At trial, defendant called only one witness, the codefendant, John Rogers. The examination conducted by defense counsel consisted of the following:
"Q. Please state your name.
A. John Louis Rogers.
Q. Mr. Rogers, calling your attention to August 15, 1978, at approximately 3:00 o'clock p.m., were you involved in a burglary of Maupin's Grocery in Saybrook, Illinois?
A. I refuse to answer the questions on the ground that it may incriminate me on the Fifth Amendment.
* * *
Q. Mr. Rogers, isn't it true that you picked up William Nelson hitchhiking after you left Saybrook on that night in question?
A. I refuse to answer the question.
Q. On the Fifth Amendment?
A. On the Fifth Amendment.
Q. Mr. Rogers, isn't it true that you burglarized that super market with another person and then dropped that person off who lived in Saybrook?
A. I refuse to answer that question on the Fifth Amendment.
Q. Mr. Rogers, isn't it true that you gave Mr. Nelson coins that were taken from that market in Saybrook, Illinois, on that night in question after you picked him up?
A. I refuse to answer on the Fifth Amendment.
Q. Isn't it true that you gave him two keys along with those coins after you stopped to pick him up when he was hitchhiking outside of Saybrook?
A. I refuse to answer on the Fifth Amendment.
Q. I have no other questions, Your Honor."
At the conclusion of this testimony the defense rested. After the conference on instructions defendant's counsel indicated that Rogers wished to testify. The court thereupon *71 examined Rogers outside the presence of the jury, and Rogers advised the court that he would follow the advice of his counsel, Schwulst, and refuse to testify. After closing arguments the jury retired and found defendant guilty on both counts.
At no time prior to or during trial, or in post-trial motions, did defendant suggest that a conflict of interest had arisen as a result of the alleged joint representation of defendant and Rogers by the public defender's office, and no motion was made requesting that independent counsel be appointed for that reason. Defendant filed two pro se motions which called into question the conduct of counsel. One, a motion for retrial, suggested that defendant's counsel, William Paul, intimidated John Rogers, resulting in Rogers' refusal to testify. The results of the circuit court's inquiry prior to sending the case to the jury did not support this contention. The other motion, in the form of a letter to the circuit court, suggested that there was a "conflict of interest" between defendant and his counsel because of disagreements over such matters as the waiver of a jury trial and counsel's willingness to interview John Rogers. Defendant in this letter requested that another attorney from the public defender's office, or an independent attorney, be appointed to replace William Paul, but did not point out any genuine conflict of interest. In addition, defendant filed a supplemental pro se motion for retrial, alleging that he had been denied legal representation from January 1, 1979, to January 25, 1979. The basis for this motion was that assistant defender Paul resigned from the public defender's office on January 1, 1979, and was not replaced by another assistant defender until January 25, 1979. In that interval no motions were heard, but defendant did not allege that he was prejudiced in any way.
The rule, long established in this jurisdiction, is that a criminal defendant in need of representation is entitled to *72 have appointed for him counsel who is free from adverse interests which might prejudice such representation. (People v. Bopp (1917), 279 Ill. 184.) In furtherance of this principle, it has likewise long been held that an attorney should not be required to represent codefendants whose defenses are inconsistent, since to do so would inevitably prejudice the defense of at least one client. 279 Ill. 184, 191-92.
Although it has been determined both by the United States Supreme Court and this court that joint representation of codefendants is not per se violative of constitutional guarantees of effective assistance of counsel (see Glasser v. United States (1942), 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457; Holloway v. Arkansas (1978), 435 U.S. 475, 55 L.Ed.2d 426, 98 S.Ct. 1173; People v. Precup (1978), 73 Ill.2d 7; People v. Durley (1972), 53 Ill.2d 156), the question has arisen repeatedly whether particular cases involving joint representation of codefendants involve defenses so antagonistic as to create a conflict of interest. (See, e.g., People v. Vriner (1978), 74 Ill.2d 329; People v. Echols (1978), 74 Ill.2d 319; People v. Berland (1978), 74 Ill.2d 286; People v. Precup (1978), 73 Ill.2d 7; People v. Durley (1972), 53 Ill.2d 156; People v. Johnson (1970), 46 Ill.2d 266; People v. Robinson (1969), 42 Ill.2d 371; People v. Ware (1968), 39 Ill.2d 66; People v. McCasle (1966), 35 Ill.2d 552.) The question to be addressed in cases where codefendants are jointly represented by one attorney or entity is whether there was an "`actual conflict of interest manifested at trial.'" (People v. Vriner (1978), 74 Ill.2d 329, 341, quoting People v. Berland (1978), 74 Ill.2d 286, 299-300.) Once such an actual conflict is identified, it is unnecessary for a defendant to demonstrate that prejudice resulted therefrom in order to sustain a finding of a violation of the right to counsel. (Holloway v. Arkansas (1978), 435 U.S. 475, 55 L.Ed.2d 426, 98 S.Ct. 1173; People v. *73 Stoval (1968), 40 Ill.2d 109, 113; People v. Berland (1978), 74 Ill.2d 286, 303.) In formulating that rule, this court relied on Glasser v. United States (1942), 315 U.S. 60, 75-76, 86 L.Ed. 680, 702, 62 S.Ct. 457, 467, where it was said:
"To determine the precise degree of prejudice sustained * * * is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."
See also People v. Berland (1978), 74 Ill.2d 286, 304.
In People v. Robinson (1979), 79 Ill.2d 147, this court declined to adopt a per se rule that attorneys in a public defender's office are members of an entity. We expressed the opinion that "the decisions of the Supreme Court and this court (see Glasser v. United States (1942), 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457; Holloway v. Arkansas (1978), 435 U.S. 475, 55 L.Ed.2d 426, 98 S.Ct. 1173; People v. Stoval (1968), 40 Ill.2d 109; People v. Kester (1977), 66 Ill.2d 162; People v. Berland (1978), 74 Ill.2d 286; People v. Vriner (1978), 74 Ill.2d 329) furnish guidance adequate to avoid conflicts of interest which will impede the furnishing of effective assistance of counsel." (79 Ill.2d 147, 159-60.) In People v. Miller (1980), 79 Ill.2d 454, we said that where the question of conflict of interest arises "a case-by-case inquiry is contemplated whereby it is determined whether any facts peculiar to the case preclude the representation of competing interests by separate members of the public defender's office. See, e.g., People v. Smith (1967), 37 Ill.2d 622." 79 Ill.2d 454, 462.
The facts in People v. Miller (1980), 79 Ill.2d 454, are similar to the facts here. In Miller the assistant public defender assigned to represent the defendant indicated that he would call Alfred Myles to the stand. Myles had *74 been charged with the same offense for which defendant was being tried and defense counsel stated that Myles, if called by the defendant, would admit his participation in the robbery. The circuit court appointed another assistant public defender to advise Myles of his rights. After consulting with the assistant assigned to him, Myles refused to testify. Defense counsel requested that Myles take the stand and the court ordered him to do so. When interrogated concerning his knowledge of and participation in the offense, Myles invoked the privilege against self-incrimination. In rejecting contentions similar to those made here, this court held that Myles would in all probability have been advised not to testify by whomever served as his attorney, and that Myles' counsel's association with the public defender's office was of no significance.
Defendant argues that this case is distinguishable from Miller because the assistant public defender representing Rogers had represented both Rogers and defendant at a preliminary hearing. He contends that because of this preliminary representation the public defender "was certainly in possession of confidential information relating to the defendant's defense when he advised Rogers to plead the Fifth Amendment." He argues that the joint representation therefore created an actual conflict of interest and the assistant public defender was placed in the position of having to fulfill his obligation to one client at the expense of another.
We note that section 3.5(b) of the ABA Standards, The Defense Function (1971), which proscribes joint representation "if the duty to one of the defendants may conflict with the duty to another," makes exceptions "for preliminary matters such as intitial hearings or applications for bail." Assuming, arguendo, that Mr. Schwulst's temporary representation of both Rogers and defendant constituted joint representation, we fail to perceive in what manner it could have affected defendant's representation *75 by Mr. Paul at trial. Mr. Schwulst was representing a codefendant who had pleaded guilty to the offense and who had not as yet been sentenced, and it is pure speculation that there was any connection between his brief representation of defendant and his advice to Rogers not to testify. It is much more probable that the advice was given in order that he not commit some act which would enhance the sentence which was likely to be imposed. As the court said in People v. Echols (1978), 74 Ill.2d 319, "In short, we do not know what strategy independent counsel would have pursued, and this court has in the past refused to find hostility between the interests of criminal codefendants based on the mere possibility that one strategy available to defense counsel would have helped one defendant at the expense of another. E.g., People v. Durley (1972), 53 Ill.2d 156, 160; People v. Robinson (1969), 42 Ill.2d 371, 374-75." (74 Ill.2d 319, 327-28.) An examination of the record in this case shows that Mr. Paul ably represented the defendant. By forcing Rogers to invoke the privilege against self-incrimination he laid the foundation for his closing argument to the jury that there was substantial doubt as to whether it was defendant or some other individual who was present with Rogers at the scene of the burglary. This record demonstrates "that the inbred adversary tendencies of the lawyers are sufficient protection" (People v. Robinson (1979), 79 Ill.2d 147, 159) against the presence of inadequate representation by separate members of the public defender's office.
We conclude that there was no conflict of interest demonstrated by this record, and for the reasons stated the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.
Appellate court reversed; circuit court affirmed.