2020 IL App (3d) 180279

Opinion filed September 3, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Fulton County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0279 Circuit No. 17-CM-10 |
| GARY R. ISBELL, | ) ) ) | Honorable Bruce C. Beal, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Holdridge and Wright concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Defendant, Gary R. Isbell, appeals following his conviction for misdemeanor domestic battery. He argues that his statutory right to a speedy trial was violated with respect to the only charge upon which he was convicted. He thus contends that a motion to dismiss that charge would have been meritorious and that defense counsel was therefore ineffective for failing to bring such a motion. In the alternative, defendant argues that the evidence at trial was insufficient to prove him guilty beyond a reasonable doubt. We reverse defendant's conviction outright.

¶ 2                                        I. BACKGROUND

¶ 3        On January 10, 2017, the State charged defendant via complaint with two counts of misdemeanor domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)). Count I of the complaint alleged that defendant "made contact of an insulting or provoking nature with Mallory Griffith, a family or household member of the defendant, in that said defendant grabbed Mallory Griffith by the neck with his hand(s)." Count II of the complaint alleged that defendant "made contact of an insulting or provoking nature with Mallory Griffith *** in that said defendant body slammed Mallory Griffith to the ground with his hand(s)."

¶ 4        Defendant posted bond on January 25, 2017. On March 18, 2017, defendant filed a speedy trial demand. After that date, the docket shows that the court granted continuances in the case on at least seven occasions, five of which were on defendant's motion.

¶ 5        On April 2, 2018, the State charged defendant with a third count of misdemeanor domestic battery (*id.* § 12-3.2(a)(1)). Count III alleged that defendant "knowingly caused bodily harm to Mallory Griffith *** in that said defendant pushed Mallory Griffith to the ground."

¶ 6        Defendant's jury trial commenced on April 17, 2018. Farmington police chief Carl Powell testified that Griffith came to the police station on January 2, 2017, alleging that her former boyfriend, defendant, had battered her the day before. Powell testified that Griffith told him that defendant "came in the house, then grabbed her cell phone, got angry with her, and body slammed her, then drug her through the house and kept hitting her." Powell took photographs of Griffith's injuries, which were admitted into evidence. The three photographs show a large bruise on Griffith's left leg, a small bruise on her left arm, and a red mark on the inside of her right arm.

¶ 7        Griffith testified that on January 1, 2017, defendant came to her house, grabbed her cell phone from her hand, and threw it to the ground. Griffith testified that defendant "instantly body slammed me to the ground onto the wood floor." Griffith attempted to flee, but she testified:

"[E]very time I got up he body slammed me as hard as he could right back down to the ground." When the State asked Griffith if defendant was pushing her down, Griffith replied: "Every time I get up, he's back to body slamming me right back down, either on my ceramic tile or hardwood floors in my house." Defendant eventually stopped attacking her and left the house.

¶ 8 Defendant testified that on the morning in question he and Griffith argued about text messages she had received. Defendant began reading Griffith's messages, and Griffith lunged at him. Defendant testified: "We kind of came like wrapped up with each other. We ended up to where her feet got tangled, we lost our balance, we both went to the floor pretty hard." Defendant denied hitting, body slamming, or choking Griffith.

¶ 9 The jury found defendant guilty on count III and not guilty on counts I and II. The court sentenced defendant to one year of conditional discharge and 90 days in jail.

¶ 10                                    II. ANALYSIS

¶ 11 Defendant argues on appeal that defense counsel rendered ineffective assistance by failing to move to dismiss count III of the complaint on speedy trial grounds. Because we agree and reverse defendant's conviction outright on those grounds, we need not consider defendant's alternative sufficiency of the evidence argument.

¶ 12 Section 103-5(b) of the Code of Criminal Procedure of 1963 mandates that a person free on bail or recognizance must be tried within 160 days of the date of his demand for a speedy trial, "unless delay is occasioned by the defendant." 725 ILCS 5/103-5(b) (West 2016). Where a defendant moves for or agrees to a continuance, the ensuing delay is considered attributable to him and will not count against the 160-day period. *People v. Patterson*, 392 Ill. App. 3d 461, 467 (2009). "A defendant not tried within the statutory period must be released from custody and is

3

entitled to have the charges dismissed." *People v. Hall*, 194 Ill. 2d 305, 327 (2000); 725 ILCS 5/103-5(d) (West 2016).

¶ 13    Where defense counsel fails to bring a speedy trial violation to the attention of the court in the form of a motion to dismiss charges, counsel renders constitutionally ineffective assistance. *People v. Staten*, 159 Ill. 2d 419, 431 (1994). Thus, when a defendant raises an ineffectiveness claim on such grounds, we must only consider whether a motion to dismiss charges on speedy trial grounds, had it been filed by counsel, would have been meritorious. *E.g.*, *id.*; *People v. Phipps*, 238 Ill. 2d 54, 65 (2010). The remedy for ineffective assistance in this regard is the same as the remedy for any speedy trial violation found on appeal: outright reversal of the conviction or convictions in question. *People v. Beyah*, 67 Ill. 2d 423, 429 (1977); *People v. Boyd*, 363 Ill. App. 3d 1027, 1039 (2006).

¶ 14    The application of the speedy trial statute "becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times." *People v. Williams*, 204 Ill. 2d 191, 198 (2003). What has come to be known as the *Williams* rule was first announced by the First District in 1981, when it held:

> "Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those

4

continuances were obtained." *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981).

Our supreme court, which would formally adopt the *Williams* rule, explained the rationale underlying the rule as follows:

> "The harm in a contrary result is obvious: a trial by ambush. The State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. *We cannot presume that a defendant would have agreed to a continuance if he had faced both charges*." (Emphasis added.) *Williams*, 204 Ill. 2d at 207.

¶ 15　　A later-filed charge will only be considered " 'new and additional' " for purposes of applying the *Williams* rule where it is subject to compulsory joinder. *People v. Williams*, 193 Ill. 2d 1, 16-17 (2000). The compulsory joinder statute requires that "[i]f the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution *** if they are based on the same act." 720 ILCS 5/3-3(b) (West 2016).

¶ 16　　In subsequent cases, our supreme court has made clear that compulsory joinder is a necessary, but not sufficient, condition for the application of the *Williams* rule. In *Phipps*, for example, the court explained that the *Williams* rule should be applied only in those situations in which the underlying rationale for the rule is applicable. *Phipps*, 238 Ill. 2d at 67. The court added:

> "The focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges. If the original charging instrument gives a defendant adequate notice of the subsequent charges, the ability to prepare for trial on those charges is not

hindered in any way. *** In those circumstances, the rationale for declining to attribute to the defendant delays in connection with the original charges does not apply." *Id.* at 67-68.

Thus, in determining whether the *Williams* rule will be applied, courts must compare the original charge to the new charge and discern whether the former provided sufficient notice of the latter, such that the defendant would not be subject to the " 'trial by ambush' " meant to be remedied by the *Williams* rule. *E.g.*, *id.* at 68-70; *People v. Staake*, 2017 IL 121755, ¶¶ 40-45.

¶ 17    With the foregoing principles in mind, we turn to the arguments of the parties on appeal. Defendant contends that count III (bodily harm domestic battery) was subject to compulsory joinder with counts I and II (insulting contact domestic battery). See 720 ILCS 5/3-3(b) (West 2016). He argues that the *Williams* rule should be applied because count III was sufficiently different from the earlier charges such that he was not on notice. Defendant concedes that the 395 days that elapsed between his speedy trial demand and his trial were largely attributable to him as to counts I and II. However, he maintains that those delays are no longer attributable to him as to count III under the *Williams* rule, resulting in a trial on that charge well outside the 160-day window. Defendant concludes that defense counsel rendered ineffective assistance by failing to move for the dismissal of count III.

¶ 18    The State, for its part, concedes many of defendant's points. For instance, the State does not dispute that *if* the *Williams* rule is applied then the delays attributable to defendant on counts I and II are not attributable to him on count III, such that a speedy trial violation occurred with respect to the later charge. Likewise, the State does not dispute that counsel would have been ineffective for failing to move to dismiss count III in that situation nor that the remedy for such ineffectiveness is outright reversal. The State's only argument is that the *Williams* rule should not

6

be applied in this case. Moreover, the State does not argue that count III was not subject to compulsory joinder; rather, it argues that counts I and II provided sufficient notice to defendant of the later charge, such that the rationale of the *Williams* rule would not be served by application of the rule. That question is thus the primary focus of our analysis.

¶ 19    In *People v. Woodrum*, 223 Ill. 2d 286, 291-92 (2006), the State originally charged the defendant with seven counts of child abduction, alleging that the defendant had lured children into a dwelling without the consent of their parents. The State subsequently filed amended indictments charging the same offenses, but adding the phrase " 'for other than a lawful purpose' " to the charges and correcting scrivener's errors. *Id.* at 292. The supreme court ruled that the *Williams* rule should not be applied and that delays attributable to the defendant on the original charges were thus also attributable to him on the later charges. *Id.* at 301. The court reasoned that both the statutory charges as well as the alleged conduct were exactly the same in the original and new charges, such that the defendant could not possibly have suffered any surprise. *Id.* at 300-01.

¶ 20    In *Phipps*, the State originally charged the defendant with reckless homicide, alleging that, while under the influence of alcohol and acting recklessly, the defendant had caused a death by operating a motor vehicle at a high rate of speed and failing to stop at a red light. *Phipps*, 238 Ill. 2d at 57. It later charged the defendant with aggravated driving under the influence (DUI), alleging that he caused a death while operating a motor vehicle while under the influence of alcohol. The supreme court again found the *Williams* rule inapplicable, pointing out that "the original indictment and subsequent information alleged the same conduct," namely, driving while under the influence of alcohol and causing a death. *Id.* at 68. The court also pointed out that reckless homicide and aggravated DUI statutes, while different, "had essentially the same elements and provided the same penalty." *Id.* The *Phipps* court thus concluded that the original reckless

7

homicide charge provided the defendant with adequate notice to prepare his defense for the aggravated DUI charge. *Id.* at 69.

¶ 21    In *People v. Hunter*, 2013 IL 114100, ¶¶ 5-6, the State charged the defendant with possession of cannabis with the intent to deliver and, much later, armed habitual criminal and unlawful use of a weapon by a felon. The supreme court found that the charges were subject to compulsory joinder and applied the *Williams* rule in finding that the defendant's right to a speedy trial had been violated. *Id.* ¶ 27. Apparently because of the obvious differences between the two charges, the court did not engage in an adequate notice analysis. See *id.*

¶ 22    In *Staake*, the defendant was initially charged with second degree murder, in that he committed first degree murder while acting under a sudden and intense passion. *Staake*, 2017 IL 121755, ¶ 3. The State would later charge him with first degree murder. *Id.* ¶ 4. In finding the *Williams* rule inapplicable, the court pointed out that both charges alleged the commission of first degree murder and that both contemplated the same conduct. *Id.* ¶ 40. The court also noted that the two charges would be subject to the same potential defenses. *Id.* ¶ 41. To that point, the court emphasized that defense counsel himself had indicated that the amended charge would not impact his preparation for trial. *Id.* While the *Staake* court conceded that first degree murder and second degree murder carried significantly different potential penalties, it concluded that "the difference in penalties under the circumstances of this case does not alone suffice to render the first degree murder charge 'new and additional.' " *Id.* ¶ 44.

¶ 23    Finally, in *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 5, the State originally charged the defendant with aggravated battery based on bodily harm, alleging that she bit the fingers of a correctional officer. Later, the State added a charge of aggravated battery based on contact of an

8

insulting or provoking nature, alleging that the defendant bit a correctional officer " 'on or about the body and/or hands.' " *Id.* ¶ 9.

¶ 24    The Second District found that the rationale of the *Williams* rule would not be served by applying it in that case. *Id.* ¶ 50. The *Moffett* court agreed that the new charge technically added an element—making contact of an insulting or provoking nature—but held, citing *Phipps*, that "not all variances in the elements between original and subsequent charges will render the latter new and additional charges." *Id.* ¶ 41. The court found that the original "bodily harm" charge implicitly and necessarily contemplated contact of an insulting or provoking nature, stating: "[I]magination strains to conjure a scenario in which the deliberate infliction of bodily harm is not insulting or provoking." *Id.* ¶ 43. The court thus concluded that the defendant "should have anticipated that the State, having charged that defendant's conduct caused bodily harm, would in time also charge that it was insulting or provoking." *Id.*[1]

¶ 25    Review of the case law on the *Williams* rule thus reveals five factors relevant to whether a defendant has received adequate notice of new charges. Foremost among these factors are (1) whether the later-charged offense had the same elements as that in the original charge and (2) whether the later charge alleged the same conduct as the original charge. *E.g.*, *Woodrum*, 223 Ill. 2d at 301. Also relevant are (3) whether the later-charged offense carried the same potential penalties as the offense originally charged (*e.g.*, *Phipps*, 238 Ill. 2d at 69), (4) whether both charged offenses are subject to the same defenses (*Staake*, 2017 IL 121755, ¶ 41), and (5) whether the later charge follows naturally from the original charge, such that the defendant would be inherently on notice (see *Moffett*, 2019 IL App (2d) 180964, ¶ 43).

---

[1]The *Moffett* court, in a footnote, explained that the defendant had not raised any issue with the different alleged conduct between the two charges—biting fingers in the original charge versus biting about the body and/or hands in the latter. *Moffett*, 2019 IL App (2d) 180964, ¶ 31 n.3.

9

¶ 26    In the present case, the State originally charged defendant with two counts domestic battery based upon "physical contact of an insulting or provoking nature." 720 ILCS 5/12-3.2(a)(2) (West 2016). The conduct alleged in counts I and II was grabbing Griffith by the neck and body slamming Griffith, respectively. In contrast, count III charged defendant with domestic battery based upon "bodily harm." *Id.* § 12-3.2(a)(1)). Count III alleged that defendant pushed Griffith to the ground.

¶ 27    The domestic battery statute sets forth two distinct versions of the offense with different elements and "distinct proof requirements." *Moffett*, 2019 IL App (2d) 180964, ¶ 43. In short, the later-filed charge in this case was a new offense containing new elements. While the *Moffett* court opined that a "bodily harm" charge provided inherent notice of a forthcoming "insulting or provoking contact" charge, the opposite is certainly not true. *Id.* The State's original charges provided no reason for defendant to assume that it would be adding a new, distinct charge 15 days before trial.

¶ 28    Furthermore, the State's later charge in this case alleged new conduct. While he was originally charged with grabbing Griffith by the neck or body slamming Griffith, the later charge alleged that defendant pushed Griffith—a wholly distinct physical act. We are unaware of any case in which a defendant was charged with *both* new elements and newly alleged conduct, yet the *Williams* rule was found inapplicable.[2] Accordingly, we find that count III in this case was "new and additional," such that the *Williams* rule applies.

¶ 29    Pursuant to that rule, the same speedy trial clock applicable to counts I and II was applicable to count III. Also under the *Williams* rule, the delays and continuances attributable to defendant with respect to counts I and II are not attributable to him with respect to count III. As a

---

[2]We also credit defendant's argument that while both forms of domestic battery are Class A misdemeanors subject to the same statutory range of penalties, the "bodily harm" version of the offense is likely to result in a comparatively harsher sentence.

result, defendant was brought to trial on count III well outside of the 160-day statutory period. See 725 ILCS 5/103-5(b) (West 2016). A motion to dismiss count III would therefore have been meritorious, and defense counsel was ineffective for failing to bring that motion. See *Staten*, 159 Ill. 2d at 431. Accordingly, we reverse defendant's domestic battery conviction under count III. See *Boyd*, 363 Ill. App. 3d at 1039.

¶ 30                                  III. CONCLUSION

¶ 31        The judgment of the circuit court of Fulton County is reversed.

¶ 32        Reversed.

**No. 3-18-0279**

| | |
|---|---|
| **Cite as:** | *People v. Isbell*, 2020 IL App (3d) 180279 |
| **Decision Under Review:** | Appeal from the Circuit Court of Fulton County, No. 17-CM-10; the Hon. Bruce C. Beal, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Justin G. Jochums, State's Attorney, of Lewistown (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |