2025 IL App (2d) 240490
No. 2-24-0490
Opinion filed June 10, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-CF-915 |
| DILLON M. SUNDELL, | ) ) ) | Honorable T. Clint Hull III, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    On May 22, 2021, defendant, Dillon M. Sundell, was charged by complaint with unlawful possession of "less than 15 grams of a substance containing [h]eroin[ ], a controlled substance" (see 720 ILCS 570/402(c) (West 2020)). On August 5, 2021, the substance was reported to have tested positive for "Fentanyl." On August 27, 2021, defendant was indicted on one count of unlawful possession of "less than 15 grams of a substance containing heroin, a controlled substance" (see *id.*). On December 13, 2022, defendant filed a demand for a speedy trial. See 725 ILCS 5/103-5(b) (West 2020). On October 4, 2023, the State filed a new indictment, charging defendant with one count of unlawful possession of "less than 15 grams of a substance containing fentanyl, a controlled substance" (see 720 ILCS 570/402(c) (West 2020)).

¶ 2    Defendant subsequently moved to dismiss the indictment because his right to a speedy trial had been violated. According to defendant, the fentanyl charge was subject to compulsory joinder (see 720 ILCS 5/3-3(b) (West 2020)) and the *Williams* rule (see *People v. Williams*, 204 Ill. 2d 191, 201 (2003) (citing *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981))). Thus, the speedy-trial term began to run on the fentanyl charge when defendant made his speedy-trial demand on the heroin charge, and no delays occasioned by defendant as to the heroin charge applied to the fentanyl charge. As a result, because the new indictment was filed more than 160 days after defendant filed his demand (see 725 ILCS 5/103-5(b) (West 2020)), his right to a speedy trial was violated. The trial court granted the motion and dismissed the indictment. The court denied the State's subsequent motion for reconsideration.

¶ 3    The State filed a timely certificate of impairment and a notice of appeal. See Ill. S. Ct. R. 604(a)(1) (eff. Apr. 15, 2024). On appeal, the State contends that the trial court erred in granting defendant's motion to dismiss. According to the State, defendant's speedy-trial right was not violated, because, (1) when it filed the new indictment charging possession of fentanyl, it "merely amended" the original indictment to correct a formal rather than a substantive defect, and, thus, compulsory joinder was not implicated; and (2) even if compulsory-joinder principles applied, defendant had adequate notice of the fentanyl charge to allow preparation of his defense, such that the delays occasioned by defendant as to the heroin charge should apply to the fentanyl charge. Alternatively, the State contends that defendant waived his speedy-trial demand by failing to appear several times after demanding a speedy trial.

¶ 4    We reverse the dismissal of the indictment filed on October 4, 2023. We agree with the State's alternative argument that defendant waived his speedy-trial demand. Because this conclusion is dispositive, we need not consider the State's initial arguments.

¶ 5                                  I. BACKGROUND

¶ 6      On May 22, 2021, defendant was charged by complaint with unlawful possession of "less than 15 grams of a substance containing [h]eroin[ ], a controlled substance" (see 720 ILCS 570/402(c) (West 2020)), stemming from his arrest on May 21, 2021. Defendant was released on a personal recognizance bond that day.

¶ 7      A Kane County Sheriff's Office "Case Report" narrative (case narrative) was prepared after defendant's arrest. The case narrative stated the following. On May 21, 2021, an individual reported observing defendant asleep in his vehicle. Deputy Rojkowski (first name not given) responded to the scene and observed defendant "asleep with his head tilted back and mouth wide open," which Rojkowski stated was "common with subjects under the influence of a narcotic[,] *** more so *** heroin." Rojkowski also "detected a strong odor of raw/burnt marijuana emitting from the vehicle." Rojkowski woke defendant up. Defendant told Rojkowski that he had taken "his medication (Suboxone) which was for people who use[d] to be on opioids" and that "he may [have] taken to[o] much." Defendant denied that he had taken heroin or that there was heroin in the vehicle. Rojkowski requested paramedics because defendant told him that "he took more medication than normal."

¶ 8      Rojkowski searched defendant's vehicle. The search revealed "a brownish grocery bag containing a clear plastic baggie containing a green leafy substance, a gold grinder, rolling papers, and a white jewelry pouch containing a dull white colored substance wrapped in a clear plastic baggie wrapped in a piece of paper." Rojkowski arrested defendant. While Rojkowski was escorting defendant to his police vehicle, defendant told Rojkowski that "the substance was heroin." Rojkowski later learned that defendant told the paramedics "that he had snorted heroin a

couple hours ago." Rojkowski "field tested the dull white powdery substance" at the Kane County Sheriff's Office evidence room. The substance "tested positive for heroin."

¶ 9    On August 5, 2021, the Illinois State Police, Division of Forensic Services, tested the "white powdery substance" and prepared a "Laboratory Report" (lab report). According to the lab report, the substance tested positive for "Fentanyl" and weighed "0.1 gram."

¶ 10    On August 19, 2021, defendant failed to appear. A warrant was issued for his arrest.

¶ 11    On August 27, 2021, defendant was indicted on one count of unlawful possession of "less than 15 grams of a substance containing heroin, a controlled substance" (see 720 ILCS 570/402(c) (West 2020)). The offense was alleged to have occurred on or about May 21, 2021.

¶ 12    One year later, on August 25, 2022, defendant was arrested and released on personal recognizance, with certain conditions imposed. Defendant appeared as ordered on September 8, 2022, October 13, 2022, and November 17, 2022.

¶ 13    On December 13, 2022, defendant filed his demand for a speedy trial.

¶ 14    On January 12, 2023, defendant appeared via Zoom. There was a "[m]otion for continuance by agreement," and the case was continued to March 2, 2023, for the completion of discovery.

¶ 15    On March 2, 2023, defendant appeared in person. There was a "[m]otion for continuance by agreement," and the case was continued to April 20, 2023, for status.

¶ 16    On April 20, 2023, the case was continued by "[a]greed [o]rder" to June 1, 2023, for status.

¶ 17    On May 22, 2023, 160 days had passed since defendant made his demand for a speedy trial. (We note, however, that time had been tolled as of January 12, 2023, because defendant had agreed to each prior continuance. See *People v. Wade*, 2013 IL App (1st) 112547, ¶ 26 ("An agreed continuance tolls the speedy trial period, whether or not the case has been set for trial.").)

¶ 18    On June 1, 2023, defendant did not "appear[ ] in open court." There was a "[m]otion for continuance by agreement," and the case was continued to June 22, 2023, for plea. The order provided that "[d]efendant must appear on the next date or warrant to issue."

¶ 19    On June 22, 2023, defendant appeared via Zoom. There was a "[m]otion for continuance by agreement," and the case was continued to July 27, 2023, for jury trial setting. Defendant was ordered "to appear in person on [the] next court date."

¶ 20    On July 27, 2023, defendant appeared in person. There was a "[m]otion for continuance by agreement," defendant filed a jury waiver, and the case was continued to October 18, 2023, for a bench trial.

¶ 21    On October 4, 2023, the State filed a new indictment. The indictment charged defendant with unlawful possession of "less than 15 grams of a substance containing fentanyl, a controlled substance" (see 720 ILCS 570/402(c) (West 2020)). The offense was alleged to have occurred on or about May 21, 2021.

¶ 22    On October 12, 2023, defendant filed a motion to continue the trial. In the motion, defense counsel indicated that she intended to file a motion to dismiss the indictment. Counsel noted that she had been unable to reach defendant to discuss the matter and asked for a continuance to do so.

¶ 23    On October 19, 2023, the trial court granted (*nunc pro tunc* to October 18, 2023), without objection, defendant's motion to continue the trial. The court continued the matter to November 8, 2023, for the filing of defendant's motion to dismiss the indictment. The order required "[d]efendant to appear" on November 8, 2023.

¶ 24    On November 8, 2023, defendant failed to appear. The trial court issued a "[f]ailure to [a]ppear [s]ummons" and continued the matter to November 30, 2023.

¶ 25    Defendant appeared on November 30, 2023, and the matter was continued by agreement to December 14, 2023.

¶ 26    On December 13, 2023, defendant filed a motion to dismiss the indictment, arguing that his speedy-trial right was violated when the State filed the new indictment charging possession of fentanyl, more than 160 days after defendant filed his demand for a speedy trial on the initial indictment charging possession of heroin. According to defendant, the fentanyl charge was subject to compulsory joinder (see 720 ILCS 5/3-3(b) (West 2020)) and the *Williams* rule (see *Williams*, 204 Ill. 2d at 201 (citing *Williams*, 94 Ill. App. 3d at 248-49)). Thus, the speedy-trial term began to run on the fentanyl charge when defendant made his speedy-trial demand on the heroin charge, and no delays occasioned by defendant as to the heroin charge applied to the fentanyl charge. Because the fentanyl charge was filed over 160 days after defendant's demand, his right to a speedy trial was violated.

¶ 27    On December 14, 2023, defendant did not "appear[ ] in open court." The trial court entered an "[a]greed [o]rder," and the matter was continued to February 22, 2024.

¶ 28    On February 22, 2024, defendant "fail[ed] to appear," and the trial court struck the motion to dismiss the indictment, with "leave to refile." The matter was continued by agreement for a pretrial conference on March 22, 2024.

¶ 29    On March 22, 2024, defendant again "[f]ailed to [a]ppear." The court issued a "[v]iolation of [p]retrial [r]elease [c]onditions of [w]arrant."

¶ 30    Defendant was apprehended and appeared on April 25, 2024. He was released with conditions. The matter was continued for a hearing on defendant's motion to dismiss the indictment.

¶ 31    The hearing took place on May 10, 2024. Defendant introduced five exhibits: (1) the case narrative; (2) the lab report; (3) the August 27, 2021, indictment; (4) the grand jury transcript from the August 27, 2021, proceedings; and (5) the October 4, 2023, indictment.

¶ 32    Defendant argued that when the State filed a new indictment, alleging an entirely different substance, it charged a new offense. Thus, the charge was subject to compulsory joinder and, because it was not filed within 160 days of defendant's demand for a speedy trial, his right to a speedy trial was violated.

¶ 33    In response, the State argued that compulsory joinder did not apply, "because [there were] not two different charges." Rather, the State was "only alleging a different controlled substance." In response to the trial court's inquiry, the State conceded that the lab report made the State aware, before the initial indictment, that the substance at issue (fentanyl) was a "different controlled substance" from what was initially charged.

¶ 34    The trial court granted the motion to dismiss, based on the doctrine of compulsory joinder and the passing of more than 160 days from defendant's speedy-trial demand to the filing of the new indictment.

¶ 35    On June 10, 2024, the State filed a motion for reconsideration. The State contended that the name of the substance was not an essential element of the offense and that, by changing the name, it "merely corrected a formal defect." According to the State, because there was no new or additional charge when the State reindicted defendant, compulsory joinder was not implicated and thus no speedy-trial violation occurred. The State also contended that, because defendant failed to appear several times after making his speedy-trial demand, he had waived that demand.

¶ 36    At a hearing on July 10, 2024, defendant moved to strike the State's motion for reconsideration in its entirety. Defendant argued that the State had raised arguments not previously

raised. The trial court denied defendant's motion to strike, finding that the State was properly arguing that there were "errors in the [c]ourt's previous application of existing law." (Internal quotation marks omitted.) Thus, the court "grant[ed] the [State's] oral motion to reopen arguments on the motion to dismiss." In addition, the court granted defendant time to respond to the State's motion and continued the matter.

¶ 37    On July 23, 2024, defendant filed a response to the State's motion for reconsideration. Defendant argued that, by reindicting defendant and changing the controlled substance from heroin to fentanyl, the State changed the nature and elements of the offense. According to defendant, "[i]f the State believed this was a formal defect and not a new charge, the State would not have re-indicted the case with the correct controlled substance. The State would have merely moved to amend the indictment on its face." Thus, defendant argued, compulsory joinder required the State to bring this new charge within 160 days of defendant's speedy-trial demand, irrespective of any delays occasioned by defendant as to the original charge.

¶ 38    Defendant further argued that the State's contention that defendant waived his speedy-trial demand by failing to appear "erroneously conflate[d] speedy trial violations with compulsory joinder violations." According to defendant, compulsory joinder was not subject to waiver. Defendant argued further that, even if the State were correct that defendant could waive his speedy-trial right for the fentanyl charge by failing to appear, defendant did not fail to appear at any time during the 160-day period following his speedy-trial demand.

¶ 39    On August 15, 2024, following arguments, the trial court ruled, without further elaboration, as follows: "[A]fter reviewing all of the case law and hearing the arguments, I am going to deny the State's motion to reconsider."

¶ 40    On August 21, 2024, the State filed a certificate of impairment and a notice of appeal. See Ill. S. Ct. R. 604(a)(1) (eff. Apr. 15, 2024).

¶ 41                                   II. ANALYSIS

¶ 42    At the outset, we note that the State has filed a motion for us to take judicial notice of proceedings in the trial court in *People v. Silva*, 2021 IL App (3d) 190507-U, after the case was remanded. Defendant opposes the motion. We agree with defendant that the postremand proceedings in *Silva* are irrelevant here, and we deny the motion.

¶ 43    The State contends that the trial court erred in granting defendant's motion to dismiss. According to the State, defendant's speedy-trial right was not violated, because, (1) when it filed the new indictment charging possession of fentanyl, it "merely amended" the original indictment to correct a formal rather than a substantive defect, and, thus, compulsory joinder was not implicated, and (2) even if compulsory-joinder principles applied, defendant had adequate notice of the fentanyl charge to allow preparation of his defense, such that the delays occasioned by defendant as to the heroin charge should apply to the fentanyl charge. Alternatively, the State contends that defendant waived his speedy-trial demand by failing to appear on numerous occasions after demanding a speedy trial.

¶ 44    We first set forth the guiding legal principles. Criminal defendants in Illinois have a statutory right to a speedy trial per section 103-5 of the Code of Criminal Procedure of 1963 (hereinafter, the speedy-trial act) (725 ILCS 5/103-5 (West 2020)). As is relevant here, subsection (b) of the speedy-trial act provides:

"(b) Every person on bail[1] or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant \*\*\*. The defendant's failure to appear for any court date set by the court operates to waive the defendant's demand for trial made under this subsection." *Id.* § 103-5(b).

Any delay occasioned by a defendant temporarily tolls the speedy-trial period. See *id.* § 103-5(f). A defendant occasions a delay if he requests a continuance, he agrees to a continuance, or his actions otherwise cause or contribute to a delay. *People v. Patterson*, 392 Ill. App. 3d 461, 467 (2009). If the defendant is not tried within the requisite period, the defendant "shall be discharged from custody or released from the obligations of his bail or recognizance." 725 ILCS 5/103-5(d) (West 2020); *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006).

¶ 45    "Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense." *Williams*, 204 Ill. 2d at 198. "Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times." *Id.* Under the *Williams* rule:

" 'Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to

---

[1]Effective January 1, 2023, the statute was amended to replace "bail" with "pretrial release." See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023) (amending 725 ILCS 5/103-5).

defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " (Emphasis omitted.) *Id.* at 201 (quoting *Williams*, 94 Ill. App. 3d at 248-49).

¶ 46 "A later-filed charge will only be considered 'new and additional' for purposes of applying the *Williams* rule where it is subject to compulsory joinder." (Internal quotation marks omitted.) *People v. Isbell*, 2020 IL App (3d) 180279, ¶ 15. The compulsory-joinder statute provides that, "[i]f the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution *** if they are based on the same act." 720 ILCS 5/3-3(b) (West 2020). Thus, under the *Williams* rule, when the initial and subsequent charges are subject to compulsory joinder, a delay that is attributable to the defendant as to the original charge will not toll the speedy-trial period as to the subsequent charge if the delay occurred before the subsequent charge was filed, because the subsequent charge was not before the trial court when that delay occurred. See *People v. Phipps*, 238 Ill. 2d 54, 67 (2010).

¶ 47 The purpose of the *Williams* rule is to prevent " 'trial by ambush.' " *Id.* (quoting *Williams*, 204 Ill. 2d at 207). Without the rule,

> " '[t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges. *** When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial.' " *Id.* (quoting *Williams*, 204 Ill. 2d at 207).

¶ 48    Our supreme court has since clarified that charges are not "new and additional" for purposes of the *Williams* rule if the original charging instrument provided the defendant with "adequate notice of the subsequent charges to allow preparation of a defense." *Id.*

> "If the original charging instrument gives a defendant adequate notice of the subsequent charges, the ability to prepare for trial on those charges is not hindered in any way. *** In those circumstances, the rationale for declining to attribute to the defendant delays in connection with the original charges does not apply." *Id.* at 67-68.

Therefore, "compulsory joinder is a necessary, but not sufficient, condition for the application of the *Williams* rule." *Isbell*, 2020 IL App (3d) 180279, ¶ 16.

> "[I]n determining whether the *Williams* rule will be applied, courts must compare the original charge to the new charge and discern whether the former provided sufficient notice of the latter, such that the defendant would not be subject to the 'trial by ambush' meant to be remedied by the *Williams* rule." *Id.* (quoting *Phipps*, 238 Ill. 2d at 67-68).

¶ 49    With these principles in mind, we turn to the present case. Defendant argues that, contrary to the State's arguments on appeal, the second indictment, charging unlawful possession of fentanyl, constituted a new and additional charge for purposes of the *Williams* rule. Thus, according to defendant, because defendant was not tried within 160 days of his speedy-trial demand, we must dismiss the indictment. We need not resolve this issue, because even if we were to agree with defendant that the fentanyl charge was a new and additional charge, defendant waived his speedy-trial demand by failing to appear several times after filing it.

¶ 50    Our decision in *Patterson*, 392 Ill. App. 3d 461, is instructive. In *Patterson*, the defendant was charged in Boone County on April 2, 2004, with various violations of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2004)). *Id.* at 462. On October 19, 2005, the defendant

submitted a speedy-trial demand to the trial court under the intrastate detainer statute, which the trial court filed on October 25, 2005. *Id.* In the demand, the defendant stated that, on August 22, 2005, he had been convicted in Cook County of driving while his license was revoked and he was sentenced to one year of incarceration, which he was still serving. *Id.* On November 3, 2005, the defendant was released from prison, but he failed to notify Boone County of his whereabouts. *Id.* at 463. Thereafter, the defendant failed to appear on January 19, 2006, and on March 2, 2006. *Id.* The record was silent as to whether the defendant was notified of those court dates. *Id.* On July 11, 2006, the defendant was arrested on a bench warrant and posted bond. *Id.* The defendant failed to appear on July 21, 2006, and another warrant was issued. *Id.* He was later arrested and, on November 16, 2006, moved to dismiss the charges, alleging that he had not been brought to trial within 160 days. *Id.* (Because the defendant filed his demand on October 19, 2004, his speedy-trial period would have expired 160 days later, on March 28, 2006.) The trial court denied the motion. *Id.* Following his conviction, the defendant appealed. *Id.*

¶ 51    On appeal, the defendant argued that, because more than 160 days passed between his demand and his trial, his motion to dismiss should have been granted. *Id.* at 464. The State responded that the defendant waived his speedy-trial demand by failing to appear after filing it. *Id.* at 465. We agreed. We cited the following language in subsection (b) of the speedy-trial act: "The defendant's failure to appear *for any court date set by the court* operates to waive the defendant's demand for trial made under this subsection." (Emphasis added.) 725 ILCS 5/103-5(b) (West 2004). We stated:

"A fundamental principle of statutory construction is that, when interpreting a statute, a court must give effect to the legislature's intent, the best indication of which is the language of the statute, given its plain and ordinary meaning. [Citation.] When the

statute's language is clear and unambiguous, a court must apply the statute without resort to further statutory-construction aids. [Citation.]

Here, [the defendant] failed to appear in January and March 2006, and again in July 2006. We might be willing to presume that a waiver can occur only when the defendant had notice of a missed date. However, [the defendant] does not deny that he had notice of the July date, and thus he clearly waived his demand at that point. *Section 103-5(b) says nothing to indicate that a waiver can occur only before the speedy-trial period has run. Indeed, the running of the period means only that a defendant can enforce his or her demand; it does not mean that he or she cannot waive it*." (Emphases in original and added.) *Patterson*, 392 Ill. App. 3d at 467.

Thus, we held that "[the defendant] waived his speedy-trial demand by failing to appear." *Id.* at 468. Here, based on the plain language of the speedy-trial statute and our holding in *Patterson*, we conclude that defendant waived his speedy-trial demand by failing to appear on several dates after filing his demand.

¶ 52　Defendant argues that *Patterson* is distinguishable because (1) the *Patterson* defendant failed to appear both during and after the speedy-trial term, (2) the *Patterson* defendant actively contributed to the delay, and (3) *Patterson* did not involve compulsory joinder. Alternatively, defendant argues that *Patterson* was wrongly decided. Defendant's arguments are unpersuasive.

¶ 53　First, defendant argues that *Patterson* is distinguishable because, there, two of the defendant's failures to appear (January 19, 2006, and March 2, 2006) occurred before the speedy-trial term had run. Defendant claims that, here, he "did not absent himself from the court at any time during the 160 days following his speedy trial demand." Defendant notes that, because he made his demand on December 13, 2022, the State was required to bring any new and additional

charges by May 22, 2023 (160 days after he filed his demand). Thus, he argues, because his "first unexcused absence" occurred on June 1, 2023, 171 days after he made his demand, waiver is inapplicable.

¶ 54    To be sure, in *Patterson*, two of the defendant's three unexcused absences did occur before the speedy-trial term had expired. However, we did not rely on those two absences to find waiver. Rather, we expressly stated:

> "We might be willing to presume that a waiver can occur only when the defendant had notice of a missed date[(which he did not have as to the two earlier dates)]. However, [the defendant] does not deny *that he had notice of the July date, and thus he clearly waived his demand at that point*." (Emphasis added.) *Id.* at 467.

Our holding was expressly premised on the defendant's failure to appear in July, *after the speedy-trial period had run*, which is why we went on to state: "Section 103-5(b) says nothing to indicate that a waiver can occur only before the speedy-trial period has run. *Indeed, the running of the period means only that a defendant can enforce his or her demand; it does not mean that he or she cannot waive it*." (Emphases in original and added.) *Id.* Thus, defendant's absences here, occurring after the statutory period had run for purposes of the fentanyl charge, place this case squarely within our holding in *Patterson*.[2]

---

[2]We note too that, here, the speedy-trial period had been tolled as of January 12, 2023, due to several agreed continuances. See *Wade*, 2013 IL App (1st) 112547, ¶ 26 ("An agreed continuance tolls the speedy trial period, whether or not the case has been set for trial."). Thus, the 160-day period on the heroin indictment had not yet expired on June 1, 2023, when defendant made his first unexcused absence. Defendant makes no argument that, taking into consideration the tolling of the speedy-trial period, his absence on June 1, 2023, would not have resulted in a waiver of his speedy-trial demand with respect to the

¶ 55    Defendant also argues that *Patterson* is inapplicable because the defendant there actively contributed to the delay. Defendant points to our remarks following our finding of waiver: "Further, we note that, waiver aside, [the defendant] contributed to the delay by filing shortly before his release a demand that incorrectly stated that he had one year remaining to serve on his Cook County sentence. He then did not notify the trial court of his location." *Id.* To be sure, we concluded that the defendant failed to affirmatively show that his actions did not contribute to the delay. *Id.* at 468. However, we prefaced those comments by stating, "*waiver aside*." (Emphasis added.) *Id.* at 467. Moreover, our conclusion to the opinion read: "[The defendant] waived his speedy-trial demand by failing to appear. Accordingly, the judgment of the circuit court of Boone County is affirmed." *Id.* at 468. Thus, our affirmance was based unqualifiedly on the waiver. *Id.* Thus, our additional observations had no effect on our holding that the defendant waived his speedy-trial demand.

¶ 56    Defendant also asserts that *Patterson* is distinguishable because compulsory-joinder principles were not at play in that case. But defendant makes no further argument as to why that warrants a different result. As the State points out, defendant required a viable speedy-trial demand to justify a speedy-trial-act dismissal of the fentanyl charge, because dismissal is not self-executing under the compulsory-joinder statute, as it contains no timeline for prosecution. See 720 ILCS 5/3-3 (West 2020). It was the speedy-trial act that provided the relevant timeline for trial here. See 725 ILCS 5/103-5 (West 2020). The *Williams* rule makes clear:

---

initial indictment. He argues only that this absence occurred outside of the 160-day period that would have been applicable to any new and additional charges.

" 'Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges *is subject to the same statutory limitation that is applied to the original charges*.' " (Emphasis added.) *Williams*, 204 Ill. 2d at 201 (quoting *Williams*, 94 Ill. App. 3d at 248-49).

Here, the " 'statutory limitation that is applied to the original charges' " (*id.* (quoting *Williams*, 94 Ill. App. 3d at 249)) stems from the speedy-trial act, which, under the facts of this case, requires a valid demand. When defendant failed to appear, albeit after the speedy-trial period on the fentanyl charge had run, he waived his demand. See *Patterson*, 392 Ill. App. 3d at 467 ("[T]he running of the period means only that a defendant can *enforce* his or her demand; it does not mean that he or she cannot waive it." (Emphasis in original.)). As such, the fentanyl charge was not subject to speedy-trial strictures until defendant renewed his demand, which he did not.

¶ 57 Defendant also argues that *Patterson* was wrongly decided. Defendant criticizes our failure to cite authority in support of our conclusion that a defendant can waive a speedy-trial demand by failing to appear after the speedy-trial period has run. However, we noted in our decision that the statutory language regarding waiver was a recent addition; thus, there was "a lack of case law concerning the provision." *Id.* at 466. As a result, we applied principles of statutory interpretation and relied on the plain language of the statute. We construed the statute properly. The legislative intent is plain: "The defendant's failure to appear for *any* court date set by the court operates to waive the defendant's demand for trial made under this subsection." (Emphasis added.) 725 ILCS 5/103-5(b) (West 2022). By asking us to find that the waiver provision does not apply to court dates that take place after the statutory period has run, defendant asks us to read an exception into the statute. This we cannot do. See *People v. Serrato-Zavala*, 2024 IL App (2d) 240255, ¶ 19 ("We

cannot depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not intend.").

¶ 58    Accordingly, based on the foregoing, we hold that defendant waived his demand for a speedy trial.

¶ 59                                III. CONCLUSION

¶ 60    For the reasons stated, we reverse the judgment of the circuit court of Kane County dismissing the State's indictment filed on October 4, 2023. We remand for further proceedings.

¶ 61    Reversed and remanded.

*People v. Sundell*, **2025 IL App (2d) 240490**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-CF-915; the Hon. T. Clint Hull III, Judge, presiding. |
| **Attorneys for Appellant:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, Max C. Boose, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Christopher McCoy, and Laura Peters, of State Appellate Defender's Office, of Elgin, for appellee. |